**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
SCOTT ANNICELLI,

                                Plaintiff,                      **25-CV-02424 (RMB) (KHP)**

           -against-                             **REPORT AND RECOMMENDATION**
                                               **ON MOTION TO DISMISS**

NEW YORK CITY POLICE DEPARTMENT
and CITY OF NEW YORK,

                              Defendants.
------------------------------------------------------------------X

**TO:    RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

In this religious discrimination action, Plaintiff Scott Annicelli alleges that when

Defendants New York City Police Department ("NYPD") and the City of New York (the "City")

denied his religious accommodation request to be excused from mandatory Covid-19

vaccination, they violated his First Amendment religious exercise rights and discriminated

against him under the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL,"

respectively).  Defendants have moved to dismiss the Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons discussed below, I

respectfully recommend that Defendant's Motion to Dismiss be GRANTED IN PART to the

extent of dismissing the NYPD as a non-suable entity, dismissing the cooperative dialogue claim

without prejudice, and otherwise DENIED.

## BACKGROUND

The Court derives the facts from the face of the Complaint, which for the purposes of

this motion are assumed to be true.  Plaintiff Scott Annicelli, currently a resident of Florida,

alleges that he was "constructively terminated" from his job at the New York Police Department

("NYPD") in 2022. (ECF No. 1, Compl. ¶¶ 8-10.)  He was hired in 2007 as a Patrolman and eventually promoted to the high rank of Second Grade Detective. (*Id.* ¶¶ 21-23.)  He worked at One Police Plaza in New York City and was assigned to the Personnel Orders Division. (*Id.* ¶¶ 24-25.)  During his time on the force, he "worked extended hours, often serving 12-hour shifts, seven days a week," and "often stayed overnight at his office to fulfill his duties. (*Id.* ¶¶ 27-28.)

Plaintiff is a Christian and belongs to Croton Falls Community Church in Croton Falls, New York. (*Id.* ¶ 30.)  He became a deacon with his church in 2018, actively participating in church activities, such as assisting the pastor during Sunday services, among other volunteering roles. (*Id.* ¶¶ 31-32.)  He "refuses all vaccines" and "does not vaccinate his child based on his sincerely held religious beliefs" (*Id.* ¶¶ 33-34.)  His son "has a religious exemption for the vaccine requirement in order to attend school." (*Id.* ¶ 35.)  He "believes that getting a vaccine would go against his basic faith in God who has sustained him." (*Id.* ¶ 36.)  During the global COVID-19 pandemic, "Plaintiff's faith led him to rely solely upon God," whom he "believes has the power over his life and death." (*Id.* ¶ 37.)

On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene ("CHMH") issued the City Worker COVID-19 Vaccine Mandate (the "Vaccine Mandate"), which required all city workers, including NYPD, to receive the COVID-19 vaccine by October 29, 2021. (*Id.* ¶ 46.)  The Vaccine Mandate provided for reasonable accommodations on its face. (*Id.* ¶ 48.)  Defendants implemented a procedure for accepting religious and medical accommodation requests. (*Id.* ¶ 49.)  Plaintiff alleges Defendant City of New York (the "City") had "mutual aid agreements with outside municipalities that did not have vaccination requirements and/or provided first responders to work unvaccinated with reasonable accommodation." (*Id.* ¶ 50.)

The City promulgated a written policy regarding the implementation of the Vaccine Mandate and reasonable accommodations, which specified that sincerely held religious beliefs may qualify for a reasonable accommodation. (*Id.* ¶¶ 51-52.)  The policy allowed an alternative to vaccination for employees granted a reasonable accommodation, whereby they could submit a weekly negative test result. (*Id.* ¶ 53.)  The policy was promulgated through the Department of Citywide Administrative Services ("DCAS"). (*Id.* ¶¶ 122-23.)  It allegedly allowed for "broad, subjective judgment[s]" by decision-makers, which enabled them "to impose their own personal or ideological biases . . . , leading to arbitrary and inconsistent outcomes." (*Id.* ¶¶ 126-27.)

Further, Plaintiff asserts Defendants showed animus against Christians, since the head of the Reasonable Accommodation Unit for NYPD sent an email to that Unit attaching a New York Times article expressing the view that there was "no legitimate religious basis for exemptions from vaccine mandates in any established stream of Christianity." (*Id.* ¶¶ 128-29.) Thus, Plaintiff alleges Defendants' accommodation standards and policies were consistent with that view, excepting only Jehovah's Witnesses and Christian Scientists. (*Id.* ¶¶ 130-31.) Decision-makers on requests for accommodations sometimes followed these standards and sometimes did not. (*Id.* ¶¶ 137-38.)  Plaintiff alleges the individual who made the determination on his application denied it "because they disagreed with him" and "because he identified as a Christian." (*Id.* ¶¶ 138-39.)  He also alleges the City "categorically denied religious accommodation requests" from Christians under a presumption that "their objections were invalid if their 'religious leaders' did not officially oppose the vaccine." (*Id.* ¶ 141.)  Who these

3

religious leaders supposedly were was arbitrary, with the Pope allegedly identified for many non-Catholic Christians. (*Id.* ¶ 143.)

According to Plaintiff, this misidentification caused erroneous denials of accommodations, including to Plaintiff. (*Id.* ¶¶ 144-47.)  Notwithstanding the above allegations, Plaintiff also pleads that Defendants approved accommodations for some Christians and other faiths – contrary to his claim that they "categorically" denied accommodations to Christians. Plaintiff asserts, however, that Defendants had "a preference for one religious viewpoint over another within the same faith tradition," though he does not specify what precisely this supposed preference was or provide any concrete examples. (*Id.* ¶¶ 148-59.)  Plaintiff also alleges that, at a training session for individuals responsible for reviewing and deciding accommodation requests to the Vaccine Mandate, NYPD Equal Employment Opportunity Division Director Michael Melocowsky "instructed the reviewers that judgments on religious accommodation requests were 'subjective' and that the reviewers would have to decide if the applicant had a sincerely held religious belief." (Compl. ¶ 91.)  Melocowsky also allegedly stated that "very few" of the requests would be approved. (*Id.* ¶ 92.)  Plaintiff incorporates by reference a whistleblower affirmation in a different case, *Valdez v. City of New York*, Index No. 152301/2022, Dkt. 115, and the City's settlement with this individual, Dkt. 114, into his Complaint. (*Id.* ¶ 93.)  According to Plaintiff, the whistleblower "disclosed to the Citywide Panel that the NYPD was instructing reviewers of accommodation requests that cooperative dialogues were not necessary in violation of the NYCHRL," and "complained of the discriminatory scrutiny applied to requests, the failure to disclose criteria being used, disparate

treatment, and potential bias." (*Id.*)[1]  Separately, Plaintiff alleges the Deputy Commissioner of the NYPD and head of the Reasonable Accommodation Unit for the NYPD sent an email to the Reasonable Accommodation Unit which included a New York Times Article and the statement, "There is no legitimate religious basis for exemptions from vaccine mandates in any established stream of Christianity." (Compl. ¶ 129.)

Notwithstanding the Vaccine Mandate, according to Plaintiff, many NYPD employees and City employees worked unvaccinated for months after it was implemented due to administrative constraints and staffing issues. (*Id.* ¶¶ 58-60.)  Plaintiff alleges some NYPD employees never received the vaccine for the duration of the Vaccine Mandate but were never terminated or placed on leave without pay ("LWOP").  Plaintiff provides no concrete examples of co-workers who worked unvaccinated (without having been given a formal accommodation) or provide any details about conditions implemented to mitigate risk of the spread of COVID-19; nor does he provide examples of co-workers who never received the vaccine but were not terminated or placed on leave.

Plaintiff filed a request for religious accommodation on October 25, 2021.[2] (*Id.* ¶ 68.) He explained his faith and his belief that God would "guide, lead, and protect" him during the pandemic and on public transportation. (*Id.* ¶ 70.)  His precise request was:

---

[1] The Complaint requests the Court take judicial notice of the alleged whistleblower's affirmation. (*Id.*)  However, this Court agrees with the reasoning offered in *Chinchilla v. N.Y.C. Police Dep't*, No. 23-cv-8986 (DEH), 2024 WL 3400526, at *2 n.2 (S.D.N.Y. July 12, 2024), that the Whistleblower Affirmation and settlement agreement docketed in the *Valdez* matter are not documents fit for judicial notice since "the characterization of this document is not 'a fact that is not subject to reasonable dispute.'" *Id.* (citing Fed. R. Evid. 201(b)).  Accordingly, the Court does not take notice of the facts asserted in the whistleblower affirmation.

[2] Because the accommodation request and denials are referenced repeatedly throughout the Complaint, the Court deems them to be incorporated by reference and in any event integral to the Complaint, thus making the documents fit for consideration on a Rule 12(b)(6) motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

> In the recent past, I have come to rely on my Christian faith to get me through these trying times.  During the height of the pandemic, when everyone in the Department was tapped to step up, and do their part, I reported for Duty every single day without missing one.  Taking public transportation, both ways for my commute, in a time when there was much less information about Covid, and no vaccine yet available.  I relied heavily on my faith to place a hedge of protection over me.  My faith journey has led me to my spiritual belief that I only need to trust in God to guide, lead, and protect me through that which I cannot control, bringing me to my choice, not to get the Covid vaccine.  Thank you for your consideration.

(Compl. ¶ 70; *see also* ECF No. 20-1.)  He also submitted a letter from his pastor, Timothy Wagner, which advised that Plaintiff's belief was "getting the vaccine would go against his basic faith in God," and expressed support for Plaintiff's decision to forego a vaccine. (Compl. ¶¶ 71-72.)  The letter cited Bible verses supporting Plaintiff's beliefs. (*Id.*)

The NYPD denied Plaintiff's accommodation request in December 2021. (*Id.* ¶ 76.) Plaintiff alleges it was "on a boilerplate form which did not contain his name," and stated the reason for the denial was that his objection "was personal, political, or philosophical." (*Id.* ¶¶ 77-78.)  The form also denied the request because of "insufficient or missing religious documentation" and because the "[w]ritten statement does not set forth how religious tenets conflicts with vaccine requirement." (ECF No. 20-2)

According to Plaintiff, the refusal to accommodate was not based on a finding of insincerity of his religious beliefs or undue hardship but rather that the City only sometimes adhered to its stated evaluation policy as it was inconsistently applied to Christians and sometimes ignored when the City allowed unvaccinated people to work (although he provides no specific examples). (Compl. ¶¶ 79-83.)  He also asserts the rejection of his religious beliefs demonstrated "an animosity to religion," though he gives no facts upon which he bases that

assertion other than the generic denial of his exemption request (*id.* ¶¶ 85-86), and concedes NYPD granted religious accommodations to 559 or more other NYPD employees, including police officers and detectives. (*Id.* ¶¶ 87-88.)  Some recipients of accommodations had close contact with the public and their colleagues and were allowed to submit to weekly PCR testing. (*Id.* ¶¶ 89-90.)

Allegedly, Defendants did not contact Plaintiff before denying his request, nor did any dialogue take place regarding accommodations or hardship. (*Id.* ¶¶ 95-98.)[3]  NYPD allegedly gave no other options and ruled out weekly PCR testing for Plaintiff without giving a reason. (*Id.* ¶ 105.)

Plaintiff appealed his denial to the Citywide Panel, which reviewed denials of reasonable accommodations requests. (*Id.* ¶¶ 108, 110.)  The Complaint is silent on whether Plaintiff provided any more information to the Citywide Panel to address the reasons given for the denial of his accommodation request or the type of accommodation he sought.  For example, he does not state whether he tried to further explain how his religious beliefs conflicted with the Vaccine Mandate.

On or around May 15, 2022, the Panel denied the appeal, stating only that Plaintiff did not meet the criteria for an exemption. (*Id.* ¶ 116-17.)  The denial also indicated that Plaintiff must submit proof of COVID-19 vaccination or else he would be placed on leave without pay (LWOP) within seven calendar days. (*Id.* ¶ 118.)  Plaintiff concedes the Citywide Panel reversed 383 other denials of reasonable accommodations requests, including for police officers and detectives. (*Id.* ¶¶ 120-21.)  In other words, the appeals process did result in some initial

---

[3] Plaintiff attributes this to Melocowsky's instructions, discussed *supra* at footnote 1. (*Id.* ¶ 99.)

7

denials of vaccine exemption requests being overturned and the exemptions granted.  Plaintiff says the Defendants cannot show that providing him a reasonable accommodation would have posed an undue hardship. (*Id.* ¶¶ 228-72.)

In January 2022, prior to learning the outcome of his appeal, Plaintiff applied for a vested separation from NYPD, running his accrued time while his accommodation request was pending with the Citywide Panel. (*Id.* ¶ 201-02.)  He alleges he would have been permitted to rescind his vested separation application and return to work if the Citywide Panel reversed his denial. (*Id.* ¶¶ 203-04.)  Because of timing issues, he did not want to wait until he received his denial to apply for vested separation, since being placed on LWOP would occur seven days after his appeal denial and he had to apply for vested separation with 30 days of notice. (*Id.* ¶¶ 207-09.)  Accordingly, he asserts he was constructively terminated. (*Id.* ¶¶ 211-13.)  He alleges he forfeited years of service, a full pension, terminal leave, the variable supplement, reserve for increased take-home pay, and life-long medical benefits, among other benefits. (*Id.* ¶¶ 214-20.)  His vested separation date was October 27, 2022. (*Id.* ¶ 225.)  Plaintiff also alleges pain and suffering damages. (*Id.* ¶¶ 273-98.)

Plaintiff filed his Complaint on March 24, 2025, alleging causes of action for a violation of his First Amendment right to freely exercise his religion, a failure to accommodate under New York City and State Human Rights Laws (NYCHRL and NYSHRL, respectively), and a failure to engage in cooperative dialogue under the NYCHRL. (*Id.* ¶¶ 299-377.)

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

8

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (cleaned up).  It must contain more than "naked assertions devoid of further factual enhancement." *Id.* (cleaned up).  The allegations must be sufficient to "nudge [] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When considering a motion to dismiss, the court must also draw all reasonable inferences in the non-moving party's favor. *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

For claims of discrimination, the Second Circuit has held that to withstand dismissal, the facts alleged in the complaint must "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 310-11 (2d Cir. 2015). "The facts . . . alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Id.*  When ruling on a motion to dismiss, the court may consider not only the complaint but also "other documents related to plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporated by reference or are integral to and solely relied upon by

9

the complaint." *Id.* at 305 n.3 (cleaned up); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citing, *inter alia*, Fed. R. Civ. P. 10(c)); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) (citing *Int'l Audiotext Network, Inc. v. Am. Tel & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (noting courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit").

## DISCUSSION

As an initial point, Defendants allege that the NYPD must be dismissed because it is not suable under the New York City Charter, Section 396.  The Second Circuit has construed this section "to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *See Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159-60 (2d Cir. 2008); *Iosilevich v. City of New York*, No. 22-cv-3714 (RPK) (LB), 2023 WL 3231597, at *2 (S.D.N.Y. May 3, 2023), *Chinchilla v. N.Y.C. Police Dep't*, No. 23-cv-8986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024).  Plaintiff offers no opposition on this point. Defendants are correct in this argument and, accordingly, the claims should be dismissed to the extent they are asserted against the NYPD.  The Court will address the claims substantively insofar as they are asserted against the City below.

Plaintiff raises two species of claims.  First, he raises three counts of religious discrimination under NYSHRL, NYCHRL, and the First Amendment.  Second, he raises a claim for failure to engage in cooperative dialogue under the NYCHRL.

10

### A. Religious Discrimination Claims

#### 1. Plaintiff's Free Exercise Claim

Plaintiff alleges the Vaccine Mandate and Defendants' denial of his requested accommodation violated his free exercise rights under the First Amendment to the United States Constitution.  The Free Exercise Clause provides that, "Congress shall make no law . . . prohibiting the free exercise" of religion, and this guarantee is "incorporated against the states via the Fourteenth Amendment." U.S. Const. amend. I; *see also New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d Cir. 2025). This Clause protects, "first and foremost, the right to believe and profess whatever religious doctrine one desires" and "thus protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." *New Yorkers for Religious Liberty*, 125 F.4th at 330 (cleaned up).

Accordingly, the First Amendment prohibits state and federal laws which "prohibit[] the free exercise of religion." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir. 2021). However, "not all laws that burden an individual's exercise of religion contravene this deeply rooted prohibition.  Nor do they always trigger heightened scrutiny." *Id.*  Rather, "a 'neutral law of general applicability' is subject to rational basis review even if it incidentally burdens a particular religious practice." *Id.* (quoting *Emp. Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990)).  However, where a law is either not neutral or is not generally applicable, it "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993).

11

On the other hand, there is no violation of the Free Exercise Clause where the government merely "enforce[s] a generally applicable rule, policy, or statute that incidentally burdens a religious practice, as long as the government can demonstrate a rational basis for the enforcement of the rule, policy, or statute, and the burden is only an incidental effect, rather than the object, of the law." *Congregation Rabbinical Coll. Of Tartikov, Inc. v. Village of Pomona, NY*, 280 F. Supp. 3d 426, 482-83 (S.D.N.Y. 2017) (cleaned up), *aff'd in part and rev'd in part on other grounds by* 945 F.3d 83 (2d Cir. 2019).  "Absent some demonstration that the purpose of the defendants' challenged actions was to impugn . . . or to restrict their religion practices . . . a Free Exercise claim will be sustained only if the government has placed a substantial burden on the observation of a central religious belief, without a compelling governmental interest justifying the burden." *Indig v. Village of Pomona*, No. 18-cv-10204 (VB), 2019 WL 6173425, at *9 (S.D.N.Y. Nov. 19, 2019) (internal quotation marks omitted) (citing *Newdow v. United States*, No. 13-cv-741 (HB), 2013 WL 4804165, at *4 (S.D.N.Y. Sept. 9, 2013), *aff'd sub nom*. *Newdow v. Peterson*, 753 F.3d 105 (2d Cir. 2014)).  "A substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Peterson*, 753 F.3d at 109.

"Religious exemptions to vaccine mandates are not constitutionally required." *Chinchilla*, 2024 WL 3400526, at *3 (citing *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021)).  That said, where "a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way." *Id.*  In *Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021), "the Second Circuit held that the [Vaccine Mandate applicable to New York City Department of Education

("DOE") employees] (which provided for medical and religious exemptions) was facially neutral and generally applicable." *Chinchilla*, 2024 WL 3400526, at *3 (citing *Kane*, 19 F.4th at 164 & n.12).

However, as applied to the DOE employees who filed the action, the Second Circuit in *Kane* held that the accommodations standards established in an arbitration award were constitutionally suspect and plaintiffs were likely to succeed on the merits because the standard for evaluating religious exemption requests favored established religions and suggested that idiosyncratic religious beliefs would not be respected. 19 F.4th at 167-69.  In so finding, the Second Circuit noted that "[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views – even the leader of her faith – runs afoul of the Supreme Court's teaching that it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Id.* (cleaned up) (citing *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)). In that case, the accommodations standards instructed the DOE to consider exemption requests "for recognized and established religious organizations," and that requests would "be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (*e.g.*, from an online source), or where the objection is personal, political, or philosophical in nature." *Id.*  Thus, the accommodations standards were not neutral and favored "established religious organizations" over personal religious beliefs that might be inconsistent with such "established religious organizations."  The Second Circuit further concluded the standards were not generally applicable, citing the proposition from *Smith* that a "system with discretionary, individualized exemptions 'lent itself

to individualized government assessment of the reasons for the relevant conduct' and was thus not generally applicable." *Kane*, 19 F.4th at 169 (citing *Smith*, 494 U.S. at 884).  Applying strict scrutiny, then, the Second Circuit determined that "[t]hese procedures cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19." *Id.*  The policy was subsequently modified consistent with the Second Circuit's ruling that exemption/accommodation requests were reviewed in accordance with the standards set forth under Title VII of the Civil Rights Act of 1964.

In a subsequent case, the Second Circuit reaffirmed its finding in *Kane* that the Vaccine Mandate was facially neutral and generally applicable. *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d Cir. 2025).  Regarding the as-applied challenges, the Second Circuit observed that "[w]hether an applicant has a (1) sincere and (2) religious belief regarding vaccination are questions of fact that are subject to examination when an employment accommodation is sought." *Id.* at 332.  But courts and accommodations panels "do not sit in judgment on the verity of an adherent's religious beliefs." *Id.* (cleaned up) (citing *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).  Nor may such decisionmakers "reject beliefs because they consider them incomprehensible." *Id.* (internal quotation marks omitted) (quoting *United States v. Seegar*, 380 U.S. 163, 184-85 (1965)).  "In other words, the Citywide Panel could deny accommodations if it concluded a claimant was not personally devout in the belief underlying the objection, but it could not deny accommodations because it cast judgment

14

on the nature of the religious objection raised." *Id.* at 332-33.  The Court's review, then, is "whether the Citywide Panel engaged in the appropriate task." *Id.*

Applying these principles to the claims at issue in *New Yorkers for Religious Liberty*, the Second Circuit dismissed six of the appellants for whom "the Citywide Panel found that, irrespective of their sincerely held religious beliefs, their requests presented an 'undue hardship' because each individual 'is a classroom teacher'" who would place their unvaccinated students at risk by being in the classroom while unvaccinated. *Id.*  It therefore upheld dismissal of these claims on a Rule 12 motion.  However, the Second Circuit found two of the appellants' as-applied Free Exercise claims had been plausibly pleaded.  Dismissal of one of the appellant's claim was vacated under the same basic rationale as *Kane*—that she had been denied under the accommodations standards of the Arbitration Award, which were not consistent with Title VII—and that she had plausibly alleged injuries despite having been reinstated to her position, because she "was potentially subjected an unconstitutional government action" insofar as her exemption request may have been denied based on her religious beliefs that were deemed "merely personal" and not consistent with beliefs of "established religious organizations." *Id.* at 334-35.  It further noted that she may have lost wages and benefits during the period she was out of work. *Id.*

Dismissal of the second appellant's claim also was vacated because the individual had made factual assertions sufficient to plausibly claim that denial of her exemption request was based on her "idiosyncratic" beliefs which the Panel found not to be "religious in nature." *Id.* The second appellant claimed she objected to the vaccine because it was a product of development of using fetal cell lines and that receiving such an injection would be inconsistent

with her faith.  The Citywide Panel found that her objection to the vaccine was "not based on her religious belief, but rather on nonreligious sources. *Id.*  The District Court was found to have erroneously construed the rationale provided as being based on "non-religious sources" and therefore erroneously concluded it was not plausible that the Citywide Panel had denied the request based on a rejection of the employee's "idiosyncratic religious beliefs."  While noting that the Citywide Panel's conclusion "could be proper and constitutional" if there was a factual basis for reaching it, it nevertheless concluded that the allegations in the complaint supported a plausible inference that the exemption request was denied "solely on the basis of its characterization of [the appellant's] religious objection as too idiosyncratic rather than as not sincerely held or non-religious in nature." *Id*.  Therefore, the claim was remanded.

### a)  Facial Challenge

The City argues that Plaintiff makes a facial challenge to the Vaccine Mandate and contends that such a challenge must be dismissed for failure to state a claim.  In his opposition, Plaintiff clarifies that he is only raising an as-applied challenge.  Given that Plaintiff has stated he does not assert a facial challenge to the Vaccine Mandate as being violative of the First Amendment, the Court does not construe the complaint as asserting that claim.  In any event, the Second Circuit already rejected facial challenges to the Vaccine Mandate in *Kane* and *New Yorkers for Religious Liberty*, finding it to be facially neutral and generally applicable. *See also Chinchilla*, 2024 WL 3400526, at *3-4.

### b)  As-Applied Challenge

16

Annicelli contends that the Vaccine Mandate as applied to him violated his First Amendment free exercise rights.  The parties raise three district court cases in their submissions that pertain to the analysis of this claim.

In a decision pre-dating *New Yorkers for Religious Liberty*, the court granted the City's motion to dismiss an as-applied challenge to the Vaccine Mandate where the plaintiff alleged insufficient facts to establish the accommodations policy was not neutral or not generally applicable. *Chinchilla*, 2024 WL 3400526, at *4-6.  The plaintiff in *Chinchilla* applied for an exemption from the Vaccine Mandate by submitting the form application for the religious exemption to the NYPD (the same form used by Plaintiff in this case) and a five-page letter describing how her religious beliefs conflicted with receiving the COVID-19 vaccination.  Among other things, the plaintiff in *Chinchilla* informed the NYPD that she believed the vaccines used aborted fetal cell lines in their manufacture or testing and, thus, receiving a vaccine was contrary to her religious opposition to abortion.  She also submitted a letter from her pastor explaining her deep involvement with her church.  Her request for an exemption was denied on the same form that the Plaintiff in this case received and for much the same reasons, including that the "Objection was personal, political, or philosophical;" "written statement does not set forth how religious tenets conflict[] with the vaccine requirement;" and "No demonstrated history of vaccination/medicine refusal."  The plaintiff appealed and received a denial of her appeal that was identical to the one received by Plaintiff in this case, stating her exemption application "Does Not Meet Criteria."

The court in *Chinchilla* concluded the plaintiff could not evade rational basis review by alleging that the City had a policy that employees stating religious objections "based on the use

of fetal cells in the development and testing of vaccines may qualify for an accommodation" or

that "the NYPD's EEOD Director gave a training to those reviewing accommodation requests in

which he stated that judgments on religious accommodations were subjective[.]" *Id.* (internal

quotation marks omitted).  Further, the statements of the EEOD Director and other statements

of then-Mayor de Blasio regarding religious objections to the Vaccine Mandate (also alleged in

the complaint in this case) were deemed insufficient to establish that the accommodations

procedures were not neutral or generally applicable. *Id.*  Emphasizing the "exceedingly narrow"

situation presented in *Kane*, the *Chinchilla* decision noted that it was "permissible" for

employers to employ a process "to determine the *sincerity* of an applicant's religious beliefs."

*Id.* (citing *Kane*, 19 F.4th at 167).  "Such a process may legitimately include questions about the

use of other medications derived from fetal cell lines without running afoul of the First

Amendment." *Id.* (collecting cases).  Nor did the *Chinchilla* plaintiff adequately allege, in non-

conclusory fashion, any hostility toward the plaintiff's religion. *Id.*  Rather, she was relying solely

on the denial of her exemption request as evidence of discrimination against her religious

beliefs, together with conclusory assertions, which the court found insufficient to plausibly

plead an as-applied claim under the First Amendment.

In another case, decided after *New Yorkers for Religious Liberty*, in which the plaintiff

raised Free Exercise and Establishment Clause claims, the court "assum[ed] *arguendo* that

rational basis review applie[d] to [p]laintiff's claims," and concluded the plaintiff had plausibly

pleaded a claim because the plaintiff alleged that "religious accommodations were only

provided for" recognized religions and that the defendants had a policy of rejecting "applicants'

religious beliefs if they were personal and not shared by other members of the applicant's

18

religious sect," citing *New Yorkers for Religious Liberty*. *See Lee v. N.Y.C. Fire Dep't*, No. 24-cv-4772 (VMS), 2025 WL 2772855, at *2 (E.D.N.Y. Sept 29, 2025).

Finally, in a more recent case—also decided after *New Yorkers for Religious Liberty*—the court denied a motion to dismiss Title VII, NYSHRL, and NYCHRL claims for failure to accommodate by granting an exemption to the Vaccine Mandate. *Mumin v. City of New York*, No. 23-cv-3932 (JLR), 2025 WL 2733229, at *1 (S.D.N.Y. Sept. 25, 2025). There, the plaintiff was a NYC Department of Corrections ("DOC") employee who sought a religious exemption from the Vaccine Mandate on the grounds her Muslim faith did not allow her to have a vaccine. Her request was denied on the grounds that an accommodation of an exemption from the vaccine with testing and masking would be an undue hardship insofar as it would present a direct threat to co-workers, the public, and detainees and insofar as there was a severe staffing shortage in the jails, requiring extra vigilance to protect against illness that would exacerbate staffing shortages. The plaintiff contended that DOC had a blanket policy of denying all Muslim's requests for accommodation and had admitted as such, whereas Christians were granted exemptions. Plaintiff included in her complaint the names of two Christian co-workers who applied for and were also not given an exemption but were not discharged from employment and allowed to test and mask even when they interacted with other employees, the public, and inmates. She also provided examples of several other Christian employees who she alleged were treated better than she was because either their exemption requests were granted and/or they were not terminated even though they were not vaccinated. The court concluded the plaintiff had made out a prima facie case of discrimination under the employment statutes because the facts pleaded rendered it plausible it would not have been an

19

undue hardship to have accommodated her insofar as other similarly situated employees were granted an accommodation. *Id.* at*2-6.

Here, for the same reasons discussed in *Chinchilla*, a rational basis review applies because the Vaccine Mandate was facially neutral and generally applicable. *See New Yorkers for Religious Liberty*, 125 F.4th at 330; *Chinchilla*, 2024 WL 3400526, at *3-4. Nothing in the complaint suggests that the policy was not facially neutral and generally applicable. Unlike in *Chinchilla*, however, the Plaintiff in this case has alleged sufficient facts – just barely – to plausibly infer that his exemption request was denied for idiosyncratic reasons (i.e., a rejection of his personal religious belief). The issue in *Chinchilla* involved the fact that the plaintiff's pleading evinced that she failed to demonstrate a history of refusing other vaccines or medications on the same basis she asserted regarding the Covid-19 vaccine. 2024 WL 3400526, at *4 (noting the accommodation "process may legitimately include questions about the use of other medications derived from fetal cell lines without running afoul of the First Amendment"). Thus, the pleading did not plausibly allege a Free Exercise violation.

But the denial in this case was not based on the rationale that Plaintiff failed to demonstrate a history of vaccination refusal. (*See* ECF No. 20-2.) Rather, it was denied because the NYPD determined his objection was "personal, political, or philosophical," and he did not "set forth how [his] religious tenets conflict[ed] with" the mandate. Further, Plaintiff has plausibly alleged he had a sincerely held religious belief against vaccination. Thus, this case is more like the claims which were reinstated by *New Yorkers for Religious Liberty*. The non-conclusory facts in the pleading that support an inference that his denial was based on a determination that his beliefs were too idiosyncratic are that one of the reasons cited for

20

rejecting his accommodation request was that his beliefs were "personal" (Compl. ¶¶ 78, 149, 151), a factor that led to the remand of the second appellant's claim in *New Yorkers for Religious Liberty*.[4] 125 F.4th at 334-35.  And second, Plaintiff alleges that the Deputy Commissioner of the NYPD and head of the Reasonable Accommodation Unit for the NYPD sent an email to the Reasonable Accommodation Unit which included the statement, "There is no legitimate religious basis for exemptions from vaccine mandates in any established stream of Christianity." (Compl. ¶ 129.)

While Plaintiff does not provide a date when the Deputy Commissioner's email was sent in relation to when his exemption request was submitted or state whether the email was sent when the version of the post-*Kane* version of the Vaccine Mandate was in effect, it is plausible that the email could have been interpreted as a directive to the unit making the decisions on applications for exemptions that a religious reason had to be consistent with an "established stream of Christianity."  To be sure, discovery may show that this email was not intended or interpreted as such or was not even viewed or considered by the people who made the decision on Plaintiff's exemption request.  Plaintiff makes other assertions which suggest that only Christian Scientists and Jehovah's Witnesses were given exemptions, but they are too conclusory to support an inference that the decision to deny his exemption request was based on the view that Plaintiff's Christian beliefs were idiosyncratic.[5]  Plaintiff also points to the same

---

[4] That the City also checked the boxes indicating they denied the request for failing to explain the conflict between Plaintiff's beliefs and the Vaccine Mandate is considered later in this Report and Recommendation.

[5] To rebut Plaintiff's allegations that the City employed a policy of denying certain religious accommodation requests based on the Christian denomination to which an individual belonged, the City submits a deposition taken in another case.  It is unclear how the City wants the Court to consider this evidence, which is not part of or integrated by reference into the Complaint, and merely reflects testimony which—at least at the time of briefing— has not been formalized into any verdict or court opinion.  The Court cannot so haphazardly set aside the rules of

statements of the EEOD that the Plaintiff in *Chinchilla* relied on.  But, for the same reasons set forth in *Chinchilla*, these allegations do not support his claim. 2024 WL 3400526, at *4-6.

Plaintiff also has adequately pleaded that any asserted undue hardship was insufficient to deny his accommodation request.  To survive dismissal on a claim for constitutional religious discrimination, the plaintiff also must plead "a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." *See New Yorkers for Religious Liberty*, 125 F.4th at 333 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). Here, the Plaintiff has done so.  First, he has alleged that the denials failed to assert that his accommodations would pose an undue hardship.  Rather, he allegedly was denied an exemption because his beliefs were deemed to be personal with no further explanation.  He has alleged that similarly situated employees received accommodations, while he did not. Specifically, he has indicated that other police officers and detectives were granted exemptions, that the accommodations were inconsistently granted and some people were allowed to work unvaccinated, suggesting that it was not an undue hardship to accommodate some people in Plaintiff's position. (Compl. ¶¶ 78, 82, 87-88.)  Again, while the complaint contains many conclusory assertions, there are sufficient facts to plausibly infer that it would not have been an undue hardship to have accommodated plaintiff by allowing him to mask and test rather than receive a vaccine.

---

procedure governing Rule 12(b)(6) motions, where the City argues no basis to accept this document as conclusively establishing the falsity of Plaintiff's allegations.  Indeed, the case in which the deposition was taken apparently featured only a facial challenge to the Vaccine Mandate. *See Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-7190 (JMF), 2024 WL 3274455, at *6 (S.D.N.Y. July 2, 2024).  Further, the religious discrimination claims in that case under Title VII, the NYSHRL, and the NYCHRL all survived. *Id.* at *6.  Thus, the City's argument is unavailing.

22

With that said, this claim is a close call.  The allegations supporting the First Amendment as-applied challenge, while in the undersigned's estimation extremely weak, are sufficient (barely) to plausibly state a claim.  Therefore, I recommend that the motion be denied with respect to Plaintiff's as-applied First Amendment claim.

### 2.  NYSHRL & NYCHRL Claims for Failure to Accommodate

The NYSHRL provides that

> [i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of . . . retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Exec. Law. § 296(10)(a).  Likewise, the NYCHRL prohibits employers from imposing terms that require employees to violate their religious beliefs and mandates reasonable accommodations for religious practices, though such accommodation must not cause "undue hardship" to the employer's business. N.Y.C. Admin. Code § 8-107(3)(a)-(b).  "[T]he NYSHRL and NYCHRL require a more liberal construction than Title VII[.]" *Mumin v. City of New York*, 760 F. Supp. 3d 28, 52 (cleaned up) (citing *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 257 (S.D.N.Y. 2014)); *see also* N.Y. Exec. L. § 300 (noting that the NYSHRL shall be construed liberally to accomplish its remedial purposes, irrespective of the federal standards); N.Y.C. Admin. Code § 8-130 (noting the same for the NYCHRL).  The rule of construction for the NYCHRL has "created a 'one-way ratchet,' by which interpretations of . . . federal civil rights statutes can serve only as a *floor* below which the City's Human Rights law cannot fall." *Mihalik v. Credit*

*Agricole Cheuvreux North Am.*, 715 F.3d 102, 109 (2d Cir. 2013) (cleaned up) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).  The same is now true of the NYSHRL, given that it was amended in 2019 to apply a substantially similar rule of liberal construction prospectively to claims. *See Qorrolli v. Metropolitan Dental Assocs., D.D.S.*, 124 F.4[th] 115, 123 (2d Cir. 2024) (stating that the NYSHRL "was amended in 2019 to align with the NYCHRL's more liberal pleading standard"); *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021) (noting the amended N.Y. Exec. L. § 300 "render[s] the standard for [NYSHRL] claims closer to the standard of NYCHRL").  Thus, "a NYSHRL or NYCHRL plaintiff . . . must allege that, compared to similarly situated employees, she experienced differential treatment – that she is treated less well – because of a discriminatory intent." *Mumin*, 760 F. Supp. 3d. at 52; *accord Mihalik*, 715 F.3d at 110 n.8.  Regarding discriminatory intent, "[a]t the pleading stage, [a] plaintiff must allege either 'facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Chowdhury v. Dep't of Hous. Pres. and Dev.*, 24-cv-0182 (ER), 2025 WL 722811, at *6 (quoting *Vega*, 801 F.3d at 83); *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

In the context of an alleged failure to grant religious accommodations, a plaintiff must show he (1) "has a bona fide religious belief that conflicts with an employment requirement," (2) "informed his employer of his belief," and (3) "was disciplined for failure to comply with the conflicting employment requirement." *Algarin v. NYC Health + Hospitals Corp.*, 678 F. Supp. 3d 497, 512-13 (S.D.N.Y. 2014) (cleaned up) (citing *Price v. Cushman & Wakefield, Inc.*, 829 F. Supp. 2d 201, 222 (S.D.N.Y. 2011)).

24

Here, Plaintiff has adequately alleged all the required elements to state a plausible claim of religious discrimination for failure to accommodate under NYSHRL and NYCHRL.  First, there is no dispute his Complaint adequately alleges that he informed his employer of his religious beliefs.  Second, as noted above, Plaintiff plausibly alleges he had a sincerely held religious belief for purposes of his free exercise claim, which applies with equal force to the requirements of the NYSHRL and NYCHRL.

He also plausibly alleges his beliefs conflicted with the Vaccine Mandate.  The City cites several cases to argue Plaintiff's beliefs were not bona fide religious beliefs in conflict with the Vaccine Mandate, but these cases are distinguishable.  It points to *Almodovar v. City of New York*, 208 N.Y.S. 3d 850 (Sup. Ct. N.Y. Cnty. Apr. 25, 2024), in which the plaintiff's accommodation request was clearly denied due to undue hardship. *Id.*  Here, the allegations make clear that the decisionmakers who denied Plaintiff's request did not deny Annicelli's request based on undue hardship.  The City also points to *Cagle v. Weill Cornell Medicine*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023), but that case is also distinguishable because there the Plaintiff failed to plead non-conclusory facts about his religious beliefs.  In this case, Plaintiff has set forth specific facts explaining the sincerity of his religious belief and the reasons why they conflict with a Vaccine Mandate that are sufficient to plausibly support a claim for discrimination.  The City will be entitled to fully evaluate the allegations and challenge them, but at this stage of the litigation the Court accepts the facts as pleaded.

Likewise, Plaintiff has adequately alleged constructive discharge to demonstrate he was subjected to discipline as a result of his failure to comply with the Vaccine Mandate.  "In some circumstances, an employee's decision to resign from his job may not be a free and voluntary

25

choice." *Morris v. Schroder Cap. Mgmt. Int'l*, 859 N.E.2d 503, 507 (N.Y. 2006) (citing the Title VII test for constructive discharge). "Constructive discharge occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Id.* (citing *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)). "In order to meet this threshold, 'the trier of fact must be satisfied that the . . . working conditions [were] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Id.* (citing *Pena*, 702 F.2d at 325). Further, "the actions of the employer in creating the intolerable workplace condition must be deliberate and intentional, and the atmosphere in the workplace must be so intolerable as to compel a reasonable person to leave." *Id.* (citations omitted). Nevertheless, "[a]n employee who fails to explore alternative avenues offered by her employer before concluding that resignation is the only option cannot make out a claim of constructive discharge." *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) (internal quotation marks removed) (citing *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000)). It is insufficient to allege merely unpleasant or difficult working conditions. *Id.* Thus, courts have found that where a plaintiff "chose to resign rather than to return to work after being granted [a] requested accommodation," such a plaintiff has not "avail[ed] himself of 'alternative avenues.'" *Livingston v. City of New York*, 563 F. Supp. 3d 201, 236 n.17 (S.D.N.Y. 2021).

In this case, Plaintiff has pleaded the choice with which he was confronted after appealing the denial of his vaccine exemption request:  he was facing strict time limits in terms of applying for a vested separation—requiring a 30-day notice and allowing for rescission of the

application if his appeal was successful—or facing ultimate termination within seven days after the appeal was denied. (ECF No. 1 ¶¶ 200-227.)  It is plausible that Plaintiff felt he had no choice but to commence the retirement process to maximize his post-employment benefits and later rescind his resignation and remain employed had his appeal been granted. *See Green v. Town of E. Haven*, 952 F.3d 394, 404-05 (2d Cir. 2020).

The cases on which the City relies to argue that a constructive discharge has not been established are outside the discrimination context and clearly inapplicable. *See Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 128 (E.D.N.Y. 2021) (involving a due process claim); *Broecker v. N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022) (same); *Marciano v. De Blasio*, 589 F. Supp. 3d 423, 426 (S.D.N.Y. 2022) (same).  Moreover, because the NYSHRL and NYCHRL make it unlawful to impose conditions which would require an employee to forego sincerely held religious practices, "it is unclear why calling the Vaccine Mandate a condition of employment tends to rebut Plaintiff's claims." *Chinchilla*, 2024 WL 3400526, at *9.

The City also argues that Plaintiff's requested accommodations would have imposed an undue hardship on the NYPD.  Undue hardship is an affirmative defense which cannot be established based on the facts pleaded here such that it cannot be the basis for dismissal on Rule 12.  In particular, the complaint alleges that many people were granted exemptions from the mandate, including people in the same position as Plaintiff, such that it is plausible it may not have been an undue hardship to give Plaintiff an accommodation.  *See Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-2929, 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023).  The City's case law on this point is distinguishable. *See, e.g.*, *Algarin v. NYC Health + Hospitals Corp.*, 678 F. Supp. 3d 497 (S.D.N.Y 2023) (undue hardship stemmed from

the fact that granting a religious exemption would cause the employer to violate state law); *Maniscalco v. N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33 (E.D.N.Y. 2021) (involving a due process claim, not employment discrimination); *see also N.Y.S. Inspection, Sec. & L. Enf't Emps. v. Cuomo*, 475 N.E.2d 90 (N.Y. 1984) (involving a state statutory safe workplace claim, not employment discrimination).

Finally, the City's attempt to rebut Plaintiff's factual allegations regarding similarly situated employees fails.  Plaintiff need not name specific individuals who were accommodated at this stage where, as here, he has alleged specific numbers of NYPD employees were granted accommodations and purported policies regarding how specific Christian denominations were treated vis-à-vis the policy.  He has also alleged that large numbers of people were permitted to work unvaccinated.  This is sufficient to plausibly infer that it would not have been an undue hardship to accommodate Plaintiff. *See Littlejohn*, 795 F.3d at 307 (requiring only "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation" to survive a motion to dismiss).

For the above reasons, I recommend denying the motion to dismiss the NYSHRL and NYCHRL claims alleging discriminatory failure to accommodate.

### B. Failure to Engage in Cooperative Dialogue Under NYCHRL

Plaintiff's final claim is for failure to engage in a cooperative dialogue about his exemption request as required by the NYCHRL.

The NYCHRL provides that it

> shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has

requested an accommodation or who the covered entity has notice may require such an accommodation . . . [f]or religious needs . . . .

N.Y.C. Admin. Code § 8-107(28)(a); *see also Chinchilla*, 2024 WL 3400526, at *12. A

"cooperative dialogue" is defined as

> the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity.

N.Y.C. Admin. Code § 8-102. This process "must include good faith written or oral dialogue

concerning the person's accommodation needs, potential accommodations that may address

those needs, and the difficulties that such accommodations may pose for the covered entity."

*Chinchilla*, 2024 WL 3400526, at *12 (citing *Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126

N.Y.S.3d 98, 102 (N.Y. App. Div. 1st Dep't 2020)). "A failure to engage in cooperative dialogue

regarding an accommodation gives rise to an independent cause of action, irrespective of any

failure to accommodate claim." *Id.* (citing *Goldman v. Sol Goldman Invs. LLC*, No. 20-cv-6727,

2022 WL 6564021, at *5 (S.D.N.Y. Aug. 5, 2022)). "The dialogue may involve a meeting with the

employee who requests an accommodation, requesting information about the condition and

what limitations the employee has, asking the employee what he or she specifically wants,

showing some sign of having considered the employee's request, and offering and discussing

available alternatives when the request is too burdensome." *Rizzo*, 2024 WL 3274455, at *4

(cleaned up). Determining "that no reasonable accommodation would enable the person

requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or

rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue." N.Y.C. Admin. Code § 8-107(28)(e).

To start, several courts have found that the City's process for employees to seek an exemption from the Vaccine Mandate and obtain an accommodation satisfied the "cooperative dialogue" requirement. *See, e.g.*, *Lee*, 2025 WL 2772855, at *4 (E.D.N.Y. Sept. 29, 2025); *Goolsby v. City of New York*, 229 N.Y.S.3d 131, 132 (N.Y. App. Div. 1st Dep't 2025); *Marsteller v. City of New York*, 192 N.Y.S.3d 18, 20-21 (N.Y. App. Div. 1st Dep't 2023)*; Chinchilla*, 2024 WL 3400526, at *33-34.

Here, Plaintiff availed himself of the accommodations and appeals process. First, he requested an accommodation from the NYPD, and then, after the NYPD denied his request and gave him instructions on how to appeal this denial, Plaintiff appealed to the Citywide Panel. (*See* Lynn Decl., Exh. B*; see also* Compl. ¶ 108.)  Moreover, he pleads that the City published FAQs for employees about the process for seeking an exemption and accommodation.  This satisfies the cooperative dialogue requirements.

Plaintiff's reliance on *Rizzo*, in which the Court denied a Rule 12 motion on the plaintiff's cooperative dialogue claim, is misplaced. 2024 WL 3274455, at *4.  The facts in *Rizzo* differed than those pled in this case.  In particular, the plaintiff in that case received a request for supplemental information about his need for an exemption and accommodation, then the plaintiff responded seeking clarification and never heard back, after which point his request was denied.  Therefore, the employer did not follow through on its own request for information or respond to the plaintiff's request for clarification so that he could adequately address any questions about his application.  Here, Plaintiff does not plead facts remotely close to this.

Rather, he merely pleads that he made an application, received a formal denial, appealed and lost his appeal.  Neither the employer nor he sought additional information as part of the process and, more critically, the employer is not alleged to have failed to respond to specific questions of Plaintiff.  In *Rizzo,* more was required than the standard protocol because of questions raised by the employer and the employee during the dialogue.

Thus, the motion to dismiss should be granted as to the cooperative dialogue claim, but without prejudice in the event Plaintiff may have additional facts that would somehow differentiate this case from the many where courts have found the City's process to satisfy the NYCHRL.

### CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendant's Motion to Dismiss be GRANTED IN PART to the extent of dismissing (1) the NYPD as an entity; and (2) Plaintiff's cooperative dialogue claim, without prejudice.  The motion should otherwise be DENIED.

Dated:       January 9, 2026
             New York, New York

Respectfully submitted,

Katharine H. Parker

_____
KATHARINE H. PARKER
United States Magistrate Judge

31

**NOTICE**

Plaintiff shall have fourteen days, and Defendants shall have fourteen days, from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).

A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2). If any party files written objections to this Report and Recommendation, the plaintiff shall have fourteen days to serve and file a response. Defendants shall have fourteen days to serve and file any response. Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Berman. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).